## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTINE VITALE and SALWA MURSHED, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MYSTIQUE HOOKAH LOUNGE, INC., MYSTIQUE GARDENS HOOKAH LOUNGE and MAGED ELDEIRY, in his individual and professional capacity,<br><br>Defendants. | Civil Action No.: 2:20-cv-01091<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Justine Vitale and Salwa Murshed, by and through their attorneys, Faruqi & Faruqi, LLP, hereby allege as follows against Defendants Mystique Hookah Lounge, Inc. ("Mystique Lounge"), Mystique Gardens Hookah Lounge ("Mystique Gardens"), and Maged Eldeiry ("Mr. Eldeiry") (collectively, "Defendants") as follows:

## NATURE OF THE CLAIMS

1.      Defendants own and operate two hookah bars in Long Island, New York: Mystique Lounge and Mystique Gardens (together, the "Hookah Bars").

2.      Defendants engage in a common and deliberate policy and practice of consistently compensating Plaintiffs and other similarly situated employees at rates that are drastically below the applicable minimum wage rates.

3.      Defendants also routinely fail to pay their employees on their regularly scheduled pay days, instead at times paying them several months or years after their wages are due.

4.      In fact, Defendants engage in a practice of withholding and retaining either all or a significant portion of their employees' first several paychecks until the last day of an employee's

employment in order to incentivize them to provide Defendants with two weeks' notice before terminating their employment with Defendants.

5.     Additionally, Defendants charge all customers an 18% Service Charge while knowingly allowing their customers to reasonably believe that the service charge is a gratuity; however, employees have never received any gratuities stemming from these service charges.

6.     Further, Defendants make unlawful deductions from their employees' wages, citing poor attitude, failure to perform tasks, and breakage as reasons for the deductions.

7.     Moreover, Defendants fail to provide their employees with Notices of Pay Rate and accurate wage statements, as required by law.

8.     Plaintiffs' claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of themselves and all other similarly situated Employees (defined *infra* ¶ 34) employed by Defendants at any time during the full statute of limitations period.

9.     Plaintiffs' claims are also brought, in part, under the New York Labor Law ("NYLL"), and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated Employees (defined *infra* ¶ 34) employed by Defendants at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

10.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

11.     Pursuant to 28 U.S.C § 1367, this Court has supplemental jurisdiction over Plaintiffs' related claims arising under State law.

12.     Pursuant to 28 U.S.C. § 1391, venue is proper because Defendants' principal place of business is located in this District and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

### A.      Plaintiff Justine Vitale

13.     Plaintiff Justine Vitale is a resident of the State of New York and was employed by Defendants from in or around September 2011 to June 2013 and again from March 2018 to January 1, 2020.

14.     At all relevant times, Ms. Vitale is an "employee" within the meaning of all relevant statutes and regulations.

### B.      Plaintiff Salwa Murshed

15.     Plaintiff Salwa Murshed is a resident of the State of New York and was employed by Defendants from in or around September 28, 2019 through in or around October 16, 2019.

16.     At all relevant times, Ms. Murshed was an "employee" within the meaning of all relevant statutes and regulations.

### C.      Defendant Mystique Hookah Lounge, Inc.

17.     Defendant Mystique Hookah Lounge, Inc. is a domestic corporation with its principal place of business located at 973 Old Country Road, Westbury, New York 11590.

18.     At all relevant times, Mystique Lounge controlled and directed the terms of employment and compensation of Plaintiffs.

19.     At all relevant times, Mystique Lounge established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

20.     At all relevant times, Mystique Lounge maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs.

21.     At all relevant times, Mystique Lounge was Plaintiffs' "employer" within the meaning of all relevant statutes and regulations.

**D.      Defendant Mystique Gardens Hookah Lounge**

22.     Defendant Mystique Gardens Hookah Lounge is a domestic corporation with its principal place of business located at 356 Conklin Street, Farmingdale, New York 11735.

23.     At all relevant times, Mystique Gardens controlled and directed the terms of employment and compensation of Plaintiffs.

24.     At all relevant times, Mystique Gardens established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

25.     At all relevant times, Mystique Gardens maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs.

26.     At all relevant times, Mystique Gardens was Plaintiffs' "employer" within the meaning of all relevant statutes and regulations.

**E.      Defendant Maged Eldeiry**

27.     Mr. Eldeiry owns and operates the Hookah Bars.

28.     At all relevant times, Mr. Eldeiry controlled and directed the terms of employment and compensation of Plaintiffs.

29.     At all relevant times, Mr. Eldeiry established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

30.     At all relevant times, Mr. Eldeiry maintained and exercised his power to hire, fire, discipline, and promote Plaintiffs.

31.     At all relevant times, Mr. Eldeiry was Plaintiffs' "employer" within the meaning of all relevant statutes and regulations.

## FACTS

**A.**     **Background**

32.     Defendants own and operate two hookah bars in Long Island, New York: Mystique Lounge and Mystique Gardens.

33.     The Hookah Bars are establishments where people gather to smoke flavored tobacco, otherwise known as shisha, from a hookah pipe and drink alcoholic beverages.

34.     Employees at the Hookah Bars hold various titles, including, *inter alia*: (i) Bartenders; (ii) Servers; (iii) Hosts; (iv) Hookah Shisha Preparers; and (v) Hookah Coal Preparers (collectively, "Employees").

35.     Upon information and belief, between both locations of the Hookah Bars, Defendants employ a staff of approximately 20 employees at any given time.

**B.**     <u>Failure to Pay Minimum Wage</u>

36.     At both Hookah Bars, Defendants engage in a common pattern and practice of deliberately denying Employees minimum wages owed.

37.     Defendants pay Employees partially or completely "off the books" at rates below State minimum wage.

38.     Indeed, Employees receive approximately $8.00 to $10.00 per hour.

39.     This common unlawful compensation scheme is communicated to Employees by Mr. Eldeiry directly.

40.     Defendants' practice results in Employees being paid well below the State minimum wage rate for as many as 36 hours in a given week.

**C.**     <u>Unlawful Administration of Tip Pool and Retention of Gratuities</u>

41.     Defendants engage in a common pattern and practice of deliberately denying Employees portions of their earned tips.

42.     Employees provide services to customers and are entitled to tips that they earn while working.

        **i.**     **Retention of Gratuities Provided by Customers**

43.     Defendants were and are permitted under the NYLL to pay Employees at an hourly rate that is less than the statutory minimum wage rate so long as the tips or gratuities that the Employees receive, when added to their hourly wages, meet or exceed the standard hourly minimum wage.

44.     In order to take advantage of this provision of the NYLL and apply a tip credit to Employees' wages, Defendants must satisfy the following two additional requirements.

45.     First, Defendants must provide Employees with a "Notice of Tip Credit" stating: (i) the employee's hourly rate; (ii) his or her overtime rate; (iii) the amount of the tip credit; (iv) the employee's regular pay day; and, most importantly, (v) that extra pay is required if tips are insufficient to bring the employee up to the statutory minimum wage.

46.     Second, all tips received by the Employees must be retained by the Employees, and no portion of the tips may be retained by Defendants.

47.     Defendants fail to comply with these requirements, thereby invalidating any claim to a tip credit and entitling Employees to recover the difference between the hourly rate they were paid and the State minimum wage they should have been paid.

48.     Defendants have *never* provided any of their Employees with the requisite Notice of Tip Credit; thereby, invalidating the tip-credit.

49.     Defendants have also consistently failed to properly distribute tips to Employees; again, invalidating the tip-credit.

50.     Defendants retain a portion of tips that should be distributed to Employees.

51.     As an example, Defendants routinely retain all tips under $20.00, whether in cash or on credit cards, that should have been distributed to Employees.

52.     Defendants' failure to properly distribute tipped income invalidates any tip credit applied towards Employees' wages and Employees are entitled to recover all unpaid minimum wages throughout the full statutory period.

53.     Additionally, Employees are entitled to recover any gratuities that Defendants improperly retained and did not properly distribute to Employees.

### ii.     Retention of Service Charges

54.     Under the NYLL, employers may not "demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

55.     Defendants charge all customers an 18% service charge, reflected on customer receipts (*see* Exhibit A), however Employees have never received any gratuities from collected service charges.

56.     Defendants are entitled to keep gratuities from service charges so long as customers are informed that gratuities from services charges are retained by Defendants.

57.     Defendants have never informed customers that gratuities from service charges are retained by Defendants.

58.     Defendants unlawfully withheld and retained gratuities from the service charges that reasonable customers would believe Plaintiffs and all other Employees would receive.

59.     By withholding gratuities and portions of gratuities, Defendants have violated the NYLL and are liable to Plaintiffs and other Employees in an amount to be determined at trial.

**D.     Late Payment of Wages**

60.     Throughout the statutory period, Defendants established a weekly pay period spanning Monday to Sunday, and designated Employees' regular pay day to be the following Monday of every week.

61.     First, Defendants engage in a systematic practice of withholding wages that Employees earn during their first week of employment until the final day of an Employee's employment.

62.     Defendants engage in such a practice in order to incentivize Employees to adhere to Defendants' policy of providing Defendants with two weeks' notice before terminating their employment at the Hookah Bars.

63.     When Employees fail to give Defendants two weeks' notice, Defendants refuse to distribute Employees' first week's wages altogether.

64.     Indeed, Defendants routinely withhold and retain an Employees' first and/or final wage as punishment for having terminated their employment with Defendants.

65.     However, even in instances where Employees provided Defendants with two weeks' notice, Defendants fail to provide Employees' earned wages – from their first work week – for months or even years after those initial wages were earned.

66.     Second, Defendants do not offer to mail wages to Employees and do not pay them via direct deposit.

67.     Instead, Employees are required to pick up their wages at the Hookah Bars.

68.     However, Defendants often failed to make Employees' wages available until several days after their regularly scheduled pay day.

**E.     <u>Failure to Provide Notices of Pay Rate and Accurate Wage Statements</u>**

69.     The NYLL requires that Defendants provide the Employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer [ ];  the name of the employer;  any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer;  plus such other

information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

70.     Throughout, the statutory period, Defendants have never provided Plaintiffs or any of the Employees with a Notice of Pay Rate.

71.     The NYLL also requires that Defendants issue or provide Plaintiffs and any of the Employees accurate wage statements with each payment of wages.

72.     Defendants *never* furnished Plaintiffs or any of the Employees with accurate wage statements during the statutory period.

**F.      Plaintiff Justine Vitale**

**i.      Background**

73.     Ms. Vitale worked for Defendants as a server at both Mystique Lounge and Mystique Gardens from approximately September 2011 to June 2013.

74.     Ms. Vitale returned to work for Defendants as a bartender and a server at Mystique Lounge from approximately March 2018 to January 1, 2020.

75.     As a bartender and a server, Ms. Vitale's duties include preparing alcoholic beverages, serving customers seated in the lounge, and cleaning up the lounge at the end of her shifts.

76.     From in or around March 2018 through in or around March 2019, Ms. Vitale worked approximately four to five days a week for approximately 25 to 36 hours per week.

77.     Indeed, Ms. Vitale would arrive at approximately 8:00 p.m. and work shifts that often did not end until 5:00 a.m.

78.     In or around March 2019, Ms. Vitale began working three days a week, Thursday through Saturday from approximately 8:00 p.m. until approximately 5:00 a.m.

79.     Ms. Vitale generally worked approximately 25 to 35 hours per week, depending on whether she worked three or five days per week.

80.     At the end of each shift, Ms. Vitale submitted all tips, whether in cash or on credit cards, to Defendants in accordance with their policy.

81.     In addition, at the end of each shift, Ms. Vitale filled out an End of the Shift Report (*see* Exhibit B) which includes the following information: the gross amount of revenue generated in cash, the gross amount of revenue generated from credit cards, the names of Employees who worked that shift, the number of hours Employees worked during that shift, the amount of tips each server and bartender received from customers, and the number of hookahs each server rented.

**ii.     Wage Violations**

82.     Even in the instances when Ms. Vitale worked 35 hours in a given work week or when Employees generated more revenue for Defendants in tips, she never received more than $350 in a given week.

83.     By way of example, from March 18, 2019 to March 24, 2019, Ms. Vitale worked five shifts for a total of 35 hours.

84.     Defendants only paid Ms. Vitale a total of $350.00 for those 35 hours worked amounting to **$10.00** per hour (considerably below the applicable State minimum wage rate).

85.     Often times, Ms. Vitale was paid significantly less than $350.00 during a work week.

86.     On or around December 1, 2019, Ms. Vitale asked the Manager named Terrance why she did not get paid the full amount she should have received for hours worked under the applicable State minimum wage law and Terrance replied, "because it was too slow."

87.     However, even on evenings where the Hookah Lounge was busy and Ms. Vitale generated more revenue for Defendants in tips, she never received more than $350.00 in a given workweek.

88.     In addition, Defendants routinely forced Ms. Vitale to clock out at 4:00 a.m. even though she regularly worked until 5:00 a.m., cleaning up the Hookah Lounge and filling out end of the shift reports as required by Defendants.

89.     Further, Defendants routinely deducted portions of Ms. Vitale's paycheck, citing Ms. Vitale's "bad attitude," breakage, or failure to properly clean the lounge at the end of the shift as justification to deduct wages.

90.     When Ms. Vitale began working for Defendants in approximately March 2018, Defendants refused to pay Ms. Vitale her earned wages.

91.     Indeed, Ms. Vitale worked approximately 35 hours during her first week of employment in March 2018, but she did not receive any compensation for those hours until long after she provided her two weeks' notice and terminated her employment with Defendants.

92.     Throughout her employment, Defendants never offered to mail Ms. Vitale her wages or allowed her to be paid via direct deposit.

93.     Instead, Ms. Vitale was always required to pick up her wages at the Hookah Lounge.

94.     Throughout the statutory period, Defendants' established a weekly pay period spanning Monday to Sunday, and designated Ms. Vitale's regular pay day to be the following Monday of every week.

95.     However, Defendants routinely failed to make Ms. Vitale's wages available until several days after her regularly scheduled pay day.

96.     Defendants never paid Ms. Vitale any gratuities stemming from service charges collected from the customers of the Hookah Bars.

97.     Defendants never provided Ms. Vitale with Notices of Tip Credit.

98.     Defendants never provided Ms. Vitale with a Notice of Pay Rate.

99.     Defendants have never provided Ms. Vitale with accurate wage statements.

100.    Ms. Vitale had numerous conversations with other Employees throughout her employment with Defendants, and they have confirmed that Defendants have never furnished Notices of Tip Credit, a Notice of Pay Rate, or accurate wage statements to any of the Employees.

101.    Through her conversations with other Employees, Ms. Vitale learned that other Employees were paid in a similar manner as herself.

**G.     Plaintiff Salwa Murshed**

**i.      Background**

102.    Ms. Murshed worked for Defendants as a bartender and a server at the Hookah Lounge from September 28, 2019 through October 16, 2019.

103.    Ms. Murshed's duties as both a bartender and a server included, *inter alia,* preparing alcoholic beverages, serving customers seated in the lounge, and cleaning up the lounge at the end of her shifts.

104.    Throughout her employment at Defendants, Ms. Murshed worked a total of approximately 45 hours.

**ii.     Wage Violations**

105.    Defendants never offered to mail Ms. Murshed her wages or allowed her to be paid via direct deposit.

106.     Instead, Ms. Murshed was always required to pick up her wages at the Hookah Lounge.

107.     Throughout the statutory period, Defendants' established a weekly pay period spanning Monday to Sunday, and designated Ms. Murshed's regular pay day to be the following Monday of every week.

108.     However, Defendants failed to make Ms. Murshed's wages available until several days after her regularly scheduled pay day.

109.     By way of example, on September 28, 2019, Ms. Murshed worked three hours at a rate of $10 per hour, however, Defendants did not pay her until October 7, 2019.

110.     In addition, Defendants routinely denied Ms. Murshed compensation at or above the applicable State minimum wage rate.

111.     By way of example, from September 28, 2019 through October 16, 2019, Ms. Murshed worked approximately 45 hours at a rate of **$10.00** per hour (below the applicable State minimum wage rate) for a total of $450.00.

112.     However, in keeping with Defendants' practice of failing to pay Employees all wages that they are owed, Ms. Murshed never received the full $450.00.

113.     By way of example, from October 6, 2019 through October 12, 2019, Ms. Murshed worked approximately 20 hours at a rate of $10.00 per hour, for a total of $200.00, however, Defendants only paid Ms. Murshed $145.00.

114.     Moreover, from October 13, 2019 through October 16, 2019, Ms. Murshed worked approximately 7.5 hours at a rate of $10.00 per hour, for a total of $75.00.

115.     Fed up with Defendants' failure to pay her on time and above minimum wage, Ms. Murshed terminated her employment with Defendants on October 16, 2019.

116.    In response, Defendants withheld her paycheck of $75.00, citing her failure to provide Defendants with a two weeks' notice before terminating her employment.

117.    To date, Defendants have never paid Ms. Murshed her final paycheck or the other wages they had withheld from her previous paychecks.

118.    Defendants never paid Ms. Murshed any gratuities stemming from service charges.

119.    Defendants never provided Ms. Murshed with Notices of Tip Credit.

120.    Defendants never provided Ms. Murshed with a Notice of Pay Rate.

121.    Defendants have never provided Ms. Murshed with accurate wage statements.

122.    In fact, Ms. Murshed was not provided with any wage statements at all.

123.    Ms. Murshed had numerous conversations with other Employees throughout her employment with Defendants, and they have confirmed that Defendants have never furnished a Notice of Pay Rate, Notices of Tip Credit, or accurate wage statements to any of the Employees.

124.    Through her conversations with other Employees, Ms. Murshed learned that other Employees were paid in a similar manner as herself.

## FLSA COLLECTIVE ACTION ALLEGATIONS

125.    Plaintiffs bring this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

126.    Plaintiffs seek to maintain claims, pursuant to FLSA § 216(b), on behalf of themselves and all other individuals employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

127.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of failing to timely

pay all wages owed.

128.     Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

129.     As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

130.     While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 60 other similarly situated persons who were employed by Defendants during the full statute of limitations period.

131.     Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

132.     Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

133.     Plaintiffs bring this action, in part, as a class action under the NYLL and applicable regulations thereunder.

## A.   Class Definition

134.   Plaintiffs seek to maintain claims, pursuant to the FRCP 23, on behalf of themselves and a class of all other employees who have been employed by Defendants as, *inter alia,* Bartenders, Servers, Hosts, Hookah Shisha Preparers, or Hookah Coal Preparers during the full statute of limitations period (the "NYLL Class").  The NYLL Class does not include any owners, directors, or managers of the Hookah Lounges.

135.   Plaintiffs allege, on behalf of themselves and the NYLL Class, that Defendants violated, *inter alia*, the NYLL by: (i) failing to compensate Plaintiffs and the NYLL Class at the applicable State minimum wage for all hours worked; (ii) failing to timely pay wages owed; (iii) improperly withholding gratuities; (iv) improperly deducting wages; (v) failing to provide Notices of Tip Credit; (vi) failing to provide Notices of Pay Rate; and (vii) failing to furnish accurate wage statements.

136.   Plaintiffs and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

137.   The wage practices described in this Complaint are part of Defendants' normal course of conduct.

138.   The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

## B.   Requirements of Rule 23(a)

### i.   Numerosity and Impracticability of Joinder

139.   The members of the NYLL Class are so numerous that joinder of all members is impracticable.

140.    While the exact number of the members of the NYLL Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 120 members of the NYLL Class.

141.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**ii.    Common Questions of Law and Fact**

142.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

143.    Indeed, there are few, purely individual issues in this action.

144.    The questions of law and fact that are common to Plaintiffs and the NYLL Class include, but are not limited to:

(a)    Whether Defendants failed to pay Plaintiffs and the NYLL Class all minimum wages owed to them;

(b)    Whether Defendants failed to timely pay Plaintiffs and the NYLL Class all wages owed;

(c)    Whether Defendants failed to pay Plaintiffs and the NYLL Class all wages owed;

(d)    Whether Defendants improperly withheld gratuities from Plaintiffs and the NYLL Class;

(e)    Whether Defendants made improper deductions from wages owed to Plaintiffs and the NYLL Class;

(f)    Whether Defendants failed to provide Plaintiffs and the NYLL Class with Notices of Tip Credit;

(g)      Whether Defendants failed to provide Plaintiffs and the NYLL Class with Notices of Pay Rate;

(h)      Whether Defendants failed to furnish accurate wage statements to Plaintiffs and the NYLL Class; and

(i)      Whether Plaintiffs and the NYLL Class are entitled to liquidated damages and injunctive relief.

145.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**iii.    Typicality of Claims and Relief Sought**

146.    Plaintiffs' claims are typical of the claims of the members of the NYLL Class they seek to represent.

147.    Plaintiffs and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

148.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their employees generally, and of the NYLL Class specifically.

149.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**iv.    Adequacy of Representation**

150.    Plaintiffs will fairly and adequately protect the interests of the NYLL Class because their interests are coextensive and aligned with those of the members of the NYLL Class.

151.    Plaintiffs have no interests adverse to the NYLL Class they seek to represent, and they have retained competent and experienced counsel.

152.    Plaintiffs are willing and able to represent the NYLL Class as fairly and vigorously as they pursue their similar individual claims.

153.    Plaintiffs have retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

154.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**C.**    **Requirements of Rule 23(b)(1)**

155.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

156.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the NYLL Class, and Defendants.

157.    By filing this Complaint, Plaintiffs are preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

158.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

**D.**    **Requirements of Rule 23(b)(2)**

159.    Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the NYLL Class by denying Plaintiffs and the NYLL Class minimum wage, failing to pay wages on time, failure to pay all wages owed, improperly withholding gratuities, making improper deductions, and failing to furnish Notices of Tip Credit, Notice of Pay Rate, and accurate wage statements.

160.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the NYLL Class as a whole.

161.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of minimum wage, timely payment of wages, all wages owed, gratuities, Notices of Tip Credit, Notices of Pay Rate, and accurate wage statements.

162.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

163.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**E.     Requirements of Rule 23(b)(3)**

164.    The common issues of fact and law affecting Plaintiffs' claims and those of the NYLL Class – including, without limitation, the common issues identified in the paragraphs above – predominate over issues affecting only individual claims.

165.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the NYLL Class.

166.    The cost of proving Defendants' pattern and practice of denying minimum wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

167.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as employees during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES**
*(On Behalf of Plaintiffs and the FLSA Collective)*

168.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

169.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and all applicable regulations thereunder.

170.    The FLSA requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

171.    Plaintiffs and the FLSA Collective were not exempt from the requirement that Defendants timely pay them their wages.

172.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

173.    Indeed, Defendants, *inter alia,* engage in a practice of withholding and retaining Plaintiffs and the FLSA Collective's first several workweek's wages until long after the termination of their employment in order to incentivize Plaintiffs and the FLSA Collective to provide Defendants with two weeks' notice before terminating their employment with Defendants.

174.    As a result of Defendants' failure to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

175.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

176.     Defendants' violations of the FLSA have significantly harmed Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE**
(*On Behalf of Plaintiffs and the NYLL Class*)

177.     Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

178.     During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

179.     The NYLL requires covered employers, including Defendants, to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek.

180.     Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

181.     Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek.

182.     As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

183.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

184.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: UNLAWFUL DEDUCTIONS**
(*On Behalf of Plaintiffs and the NYLL Class*)

185.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

186.    During the full statutory period, Plaintiffs were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

187.    The NYLL prohibits covered employers, including Defendants, from making deductions from employees' wages, except those expressly authorized in writing by the employee and for the benefit of the employee, those in relation to recovery of an overpayment of wages where such payment is due to a mathematical or other clerical error by the employer, or those in relation to an repayment of advances of salary or wages made by the employer to the employee.

188.    Plaintiffs were not exempt from the requirement that their employer not make unlawful deductions from their wages.

189.    By the actions described above, Defendants made unlawful deductions from Plaintiffs' wages.

190.    As a result of Defendants' unlawful deductions from Plaintiffs' wages, Defendants have violated the NYLL and/or applicable regulations thereunder.

191.    Defendants have acted deliberately in maintaining an intentional practice of failing to compensate Plaintiffs in accordance with the NYLL.

192.    As a result of Defendants' violations of the NYLL, Plaintiffs are entitled to recover damages to the greatest extent permitted under the law.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED**
(*On Behalf of Plaintiffs and the NYLL Class*)

193.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

194.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

195.    The NYLL requires covered employers, including Defendants, to compensate Plaintiffs and the NYLL Class at their established regular rates of pay for all hours worked in a workweek.

196.    Plaintiffs and the NYLL Class were not exempt from the requirement and are entitled to be paid by the Defendants at their established regular rates of pay for all hours worked in a workweek, during the full statute of limitations period.

197.    Throughout the full statute of limitations period, Defendants have, *inter alia,* engaged in a common policy and practice of withholding and retaining Plaintiffs' and the NYLL Class' wages earned during their first several and/or final workweeks.

198.    Defendants' failure to provide Plaintiffs and the NYLL Class with all wages earned during their first several and/or final workweeks, Defendants have not provided Plaintiffs and the NYLL Class at their established regular rates of pay for all hours worked.

199.    As a result, Defendants have violated the NYLL and/or applicable regulations thereunder.

200.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

201.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES**
*(On Behalf of Plaintiffs and the NYLL Class)*

202.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

203.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

204.    The NYLL requires covered employers, including Defendants, to pay Plaintiffs and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

205.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants timely pay them their wages.

206.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

207.     As a result of Defendants' failure to pay Plaintiffs and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

208.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

209.     Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: UNLAWFUL WITHOLDING OF GRATUITIES
*(On Behalf of Plaintiffs and the NYLL Class)*

210.     Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

211.     During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as applicable regulations thereunder.

212.     The NYLL also provides that employers may not "demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

213.     Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them gratuities received from customers.

214.     Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of withholding and retaining gratuities and portions of gratuities that reasonable customers would believe Defendants would distribute to Plaintiffs and the NYLL Class.

215.     Indeed, Defendants charge all customers an 18% service charge, but have never provided Plaintiffs and the NYLL Class any gratuities from these service charges.

216.     Further, Defendants retain all gratuities under $20.00 provided by customers and have never provided Plaintiffs and the NYLL Class any of these retained gratuities.

217.     As a result of Defendants' failure to provide earned gratuities to Plaintiffs and the NYLL Class, Defendants have violated the NYLL and/or applicable regulations thereunder.

218.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

219.     Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: NOTICE OF PAY RATE
### *(On Behalf of Plaintiffs and the NYLL Class)*

220.     Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

221.     During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

222.     The NYLL also requires that Defendants provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; and 'doing business as' names used by

the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

223.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with a Notice of Pay Rate.

224.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Plaintiffs and the NYLL Class with a Notice of Pay Rate.

225.    Indeed, Defendants have never provided Plaintiffs and the NYLL Class with a Notice of Pay Rate.

226.    As a result of Defendants' failure to provide a Notice of Pay Rate to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

227.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the NYLL Class in accordance with NYLL.

228.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $50 for each workday the violation occurred, or continued to occur, not to exceed $5,000, plus attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO FURNISH ACCURATE**
**WAGE STATEMENTS**
*(On Behalf of Plaintiffs and the NYLL Class)*

229.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

230.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

231.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

232.    Plaintiffs and the NYLL Class were not exempt from the requirement that their employer provide them with accurate wage statements.

233.    Throughout the full statute of limitations period, Defendants have failed to provide Plaintiffs and the NYLL Class with accurate wage statements.

234.    Indeed, Defendants have never provided Plaintiffs and the NYLL Class with accurate wage statements.

235.    As a result of their failure to furnish accurate wage statements to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

236.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiffs and the NYLL Class in accordance with the NYLL.

237.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $250 for each workday the violation occurred, or

continued to occur, not to exceed $5,000, plus attorneys' fees, costs, and all other available damages to the greatest extent permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, respectfully request that this Court:

A.      Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.      Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.      Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.      Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.      Designate Plaintiffs Justine Vitale and Salwa Murshed as the representatives of the FLSA Collective, and their counsel of record as class counsel;

F.      Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor

of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

      G.      Designate Plaintiffs Justine Vitale and Salwa Murshed as the representatives of the NYLL Class, and their counsel of record as class counsel;

      H.      Determine the damages sustained by Plaintiffs and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

      I.      Award Plaintiffs, the FLSA Collective, and/or the NYLL Class an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

      J.      Award Plaintiffs, the FLSA Collective, and/or the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

      K.      Grant Plaintiffs, the FLSA Collective, and/or the NYLL Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

      Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, hereby demand a trial by jury on all issues of fact and damages.

Dated: February 27, 2020             **FARUQI & FARUQI, LLP**

                         By: */s/ Innessa M. Huot*
                             Innessa M. Huot
                             Patrick J. Collopy
                             Camilo M. Burr (not yet admitted)

                         685 Third Avenue, 26th Floor
                         New York, New York 10017
                         Telephone: 212-983-9330
                         Facsimile: 212-983-9331

ihuot@faruqilaw.com
pcollopy@faruqilaw.com
cburr@faruqilaw.com

*Attorneys for Plaintiffs, the Proposed*
*FLSA Class, and the Proposed*
*NYLL Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JUSTINE VITALE and SALWA MURSHED, on
behalf of themselves and others similarly situated,

　　　　　　Plaintiffs,

　　　v.

MYSTIQUE HOOKAH LOUNGE, INC.,
MYSTIQUE GARDENS HOOKAH LOUNGE
and MAGED ELDEIRY, in his individual and
professional capacity,

　　　　　　Defendants.

Civil Action No.:

**CONSENT TO SUE**

　　　I, Justine Vitale, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, pending in the United States Court for the Eastern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

　　　I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): ___Justine Vitale___

Signature: ___Justine Vitale___　　　Date: ___2/26/2020 | 5:34 PM EST___

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

JUSTINE VITALE and SALWA MURSHED, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

MYSTIQUE HOOKAH LOUNGE, INC., MYSTIQUE GARDENS HOOKAH LOUNGE and MAGED ELDEIRY, in his individual and professional capacity,

Defendants.

Civil Action No.:

**CONSENT TO SUE**

I, Salwa Murshed, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, pending in the United States Court for the Eastern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Salwa Murshed

Signature: _____

Date: 2/26/2020 | 3:01 PM PST