

NEW YORK CALIFORNIA DELAWARE GEORGIA PENNSYLVANIA

**Innessa M. Huot**
ihuot@faruqilaw.com

March 29, 2021

**VIA ECF**

The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, New York 11722

**Re:** *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, No. 2:20-cv-01091-JMA-AKT

Dear Judge Azrack:

We represent Plaintiffs Justine Vitale ("Vitale") and Salwa Murshed ("Murshed") (together, "Plaintiffs") in the above-referenced matter and write on consent from Defendants Mystique Hookah Lounge, Inc. ("Mystique Lounge"), Mystique Gardens Hookah Lounge ("Mystique Gardens"), and Maged Eldeiry (collectively, "Defendants") to respectfully request approval of the parties' proposed settlement of this action (the "Settlement"), as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). As detailed below, the Settlement is reasonable under each of the five *Wolinsky* factors (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with the *Cheeks* admonitions. *See Cheeks*, 796 F.3d at 206.

## I. Background

Defendants own and operate two hookah bars in Long Island, New York: Mystique Lounge and Mystique Gardens (together, the "Hookah Bars"). *See* Docket Entry ("DE") 1 ("Complaint") ¶¶ 1, 17, 22, 32. Vitale worked at the Hookah Bars as a bartender and server from approximately September 2011 through June 2013 and again from March 2018 to January 2020. *Id.* ¶¶ 13, 73-74. Murshed worked at Mystique Lounge as a bartender and server from approximately September 2019 through October 2019. *Id.* ¶¶ 15, 102.

On February 27, 2020, Plaintiffs initiated this action by filing a Complaint alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by, *inter alia*, failing to timely pay them their wages. *See* Complaint. Specifically, Plaintiffs allege that Defendants retained their first few paychecks in order to incentivize them to provide a two weeks' notice before leaving Defendants' employ; and even then, Defendants still withheld these wages for months and even years. *Id.* ¶¶ 3-4, 60-68, 168-76; *see* Huot Decl. ¶ 7.[1] Further, Plaintiffs brought similar claims under the New York Labor Law ("NYLL") alleging that Defendants failed to pay them minimum wage, made unlawful deductions from their wages, withheld gratuities, and

[1] Hereinafter, all references to Declaration of Innessa M. Huot in Support of Settlement Approval and Award of Attorneys' Fees and Expenses shall be referred to as "Huot Decl."

failed to furnish them with Notices of Pay Rate and accurate wage statements. Complaint ¶¶ 36-72, 177-237; Huot Decl. ¶ 8. On July 6, 2020, Defendants filed their Answer, in which they denied all liability for Plaintiffs' claims and asserted multiple affirmative defenses. DE 13; Huot Decl. ¶ 9.

In furtherance of the parties' efforts to reach a fair and reasonable settlement of this matter, counsel engaged in a thorough investigation and an extensive exchange of documents relating to Plaintiffs' claims. Huot Decl. ¶ 10. The parties exchanged company records, payroll documents, paystubs, time records, customer receipts, and schedules. *Id.* Plaintiffs' counsel also conducted interviews with Plaintiffs, Defendants' other employees, and Defendants' customers. *Id.* ¶ 11. The parties conferred numerous times as to the strengths, weaknesses, and merits of Plaintiffs' claims and Defendants' defenses and exchanged case law supporting their respective positions. *Id.* ¶ 12. Based on the records exchanged and their thorough investigation, Plaintiffs' counsel calculated Plaintiffs' damages and the parties engaged in good faith settlement discussions, exchanging several rounds of offers, demands, counter-offers, and counter-demands, but were unable to resolve the case at that time. *Id.* ¶ 13.

On December 9, 2020, the parties participated in full day mediation before Raymond Nardo, Esq., an experienced and well-respected mediator with the U.S. District Court for the Eastern District of New York Panel Mediation Program. DE 20. Although the parties were unable to resolve the case at that time, they nonetheless made progress towards a resolution. Huot Decl. ¶ 14.

On February 4, 2021 the parties participated in a lengthy Settlement Conference with this Court wherein the parties made significant strides towards a potential resolution. DE 25. One week later, on February 10, 2021, the parties participated in a second Settlement Conference with this Court. DE 26. With Your Honor's assistance, the parties were able to resolve Plaintiffs' claims for a sum of $42,000.00 on the terms set forth in the Settlement Agreement and Release (the "Settlement") now before this Court. Huot Decl. ¶ 15; *see also id*. at Exhibit A ("Ex. A").[2]

## II. <u>The Proposed Settlement is Fair, Reasonable, and Consistent with *Cheeks*</u>

Plaintiffs submit that this Settlement is especially fair and reasonable as it provides for a 31.1% recovery of their best-case scenario damages for unpaid wages, withheld gratuities, service charge claims, ***and statutory damages*** for both Notice of Pay Rate and wage statement violations – even assuming all factual and legal assumptions are made in Plaintiffs' favor. *Id*. ¶¶ 17-18. Indeed, this assumes that Plaintiffs prevail on all of their claims and Defendants lose on all of their defenses. *Id*. ¶ 18.

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances, including, but not limited to, examining the five so-called *Wolinsky* factors: (1) Plaintiffs' range of possible recovery; (2) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement is the product of arm's-length negotiations between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36. Additionally, courts scrutinize the "admonitions"

[2] Hereinafter, all exhibits attached to the Huot Decl. will be referred to as "Ex. __."


set forth in *Cheeks* – specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015 WL 6550560, at *1 (E.D.N.Y. Oct. 28, 2015). The Settlement satisfies the five *Wolinksky* factors and does not conflict with the *Cheeks* admonitions.

**A. Plaintiffs Will Receive A Significant Portion of Their Maximum Possible Recovery Under the Settlement**

The first *Wolinsky* factor supports a finding that the Settlement is fair and reasonable, as the Settlement provides Plaintiffs with a substantial portion of the maximum possible recovery that they would obtain if they litigated this matter through summary judgment and/or trial. Indeed, where all facts are viewed in light most favorable to Plaintiffs, the Settlement results in Plaintiffs receiving 31.1% of all economic damages for unpaid wages, withheld gratuities, service charge claims, and statutory damages for both Notice of Pay Rate and wage statement violations. Huot Decl. ¶ 17.

This recovery reflects a reasonable compromise and exceeds recoveries recently approved in other wage-and-hour settlements within this Circuit. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531 (PAE), 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (finding a recovery figure of 24.9% to be reasonable "[i]n light of [] litigation risks[.]"); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354-LEK-ATB, DE 104-1 at 14, 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15-cv-6848 (KBF), 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

To ascertain Plaintiffs' best-case scenario for recovery, Plaintiffs' counsel analyzed and evaluated the merits of the various claims at issue. Huot Decl. ¶ 19. Plaintiffs' counsel conducted extensive interviews with Plaintiffs, Defendants' other employees, and Defendants' customers. *Id.* ¶ 20. Plaintiffs' counsel also reviewed documents obtained from both Plaintiffs and Defendants, including company records, payroll documents, paystubs, time records, customer receipts, and schedules. *Id.* ¶ 21. Based on this analysis and investigation, Plaintiffs' counsel analyzed the strengths and weaknesses of Plaintiffs' claims and the range of possible recoveries. *Id.* ¶ 22.

Here, Plaintiffs allege that Defendants paid them below the New York State minimum wage and also withheld their first several paychecks until several months or even years after their termination. Complaint ¶¶ 2-4, 36-40, 60-68, 168-84. Plaintiffs also claim that Defendants withheld their gratuities by, *inter alia*, retaining 100% of all tips under $20.00 and 50% of all tips over $20.00. *Id.* ¶¶ 50-53, 210-19. Plaintiffs further claim that Defendants improperly withheld gratuities in the form of an 18% service charge which should have been remitted to Plaintiffs and other tipped employees. *Id.* ¶¶ 54-59, 210-19. Lastly, Plaintiffs allege that Defendants never furnished them with Notices of Pay Rate and accurate wage statements during the statutory period. *Id.* ¶¶ 69-72, 220-37; Huot Decl. ¶ 23.

Defendants contest the validity of Plaintiffs' contentions, their claimed damages, and the assumptions underlying such claims and calculations. Huot Decl. ¶ 24. First, Defendants claim

that they never withheld any paychecks. *Id.* ¶ 25. Second, Defendants claim that they paid Plaintiffs above the minimum wage because they allegedly paid non-discretionary bonuses which Defendants assert should be included in Plaintiffs' wage rates. *Id.* Third, Defendants claim that all tips under $20.00 and half of the tips over $20.00 were not retained by Defendants but were instead placed into a tip pool and subsequently remitted to Plaintiffs and other tipped employees. *Id.* Finally, Defendants claim that the 18% service charge should not be considered a gratuity because they claim that a reasonable customer would not believe that the monies were intended to be remitted to the tipped employees. *Id.*

The parties vehemently dispute these issues and have conferred on numerous occasions regarding the legal and factual issues supporting their respective positions. *Id.* ¶ 26. For example, Plaintiffs claim that contrary to Defendants' assertions, bonuses were infrequent and discretionary (therefore properly excluded from their wage rates), there was no tip pool (therefore no retained tips were ever redistributed), and that reasonable customers were indeed led to believe that the 18% service charge remitted to the tipped employees (therefore making it a gratuity). *Id.*

All parties agree that these issues involve fact intensive inquiries regarding the nature of Plaintiffs' work, how they were paid, and how tips were collected and distributed. *Id.* ¶ 27. Among other things, these inquiries require a survey of customers and an assessment of what a reasonable customer was led to believe with respect to the 18% service charge. *Id.* The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages. *Id.* ¶ 28. Given the fact-intensive nature of the issues in dispute, had this matter not resolved, it likely would have proceeded to trial. *Id.* ¶ 29.

Making all favorable assumptions to Plaintiffs' benefit, Plaintiffs assert that their damages for all unpaid wages, including minimum wages, withheld gratuities, service charge claims and statutory damages for notice violations amount to $135,022.00. *Id.* ¶ 30. This Settlement of $42,000.00 provides Plaintiff with an 31.1% recovery of all such best-case scenario damages, including statutory damages. *Id.* ¶ 31.

Given the fact-intensive nature of the claims, and the risk that Defendants might potentially prevail on at least some of their defenses, Plaintiffs' counsel believes that this Settlement reflects a substantial portion of the maximum possible recovery that Plaintiffs would obtain if they litigated this matter through summary judgment and/or trial and is a remarkable result for Plaintiffs.

**B. By Entering Into the Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Wolinsky* factors are met because both parties will avoid the significant expense of discovery, motion practice, and the risk of a lengthy, fact-specific trial. Courts have repeatedly recognized that cases where plaintiffs must prove that they engaged in compensable work are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g., Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238 (JCF), 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risk in establishing liability for wage claims); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid . . . wages[.]").

Additionally, the burden will be especially great because the parties maintain different assessments on the manner in which Plaintiffs were paid bonuses, how they were paid tips, how these tips were distributed, what representations were made to customers, and whether Defendants' 18% service charge was intended to be a gratuity. Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"); *Surdu v. Madison Glob., LLC*, No. 15 Civ. 6567 (HBP), 2017 WL 3842859, at *10 (S.D.N.Y. Sept. 1, 2017) (Acknowledging the risks plaintiffs face "with respect to establishing liability and damages, [] if the case proceeded to trial[,]" where "Defendants have potentially strong defenses to plaintiffs' allegation that defendants misappropriated plaintiffs' tips."); Huot Decl. ¶ 32. Given the fact-intensive analysis of the issues in dispute, the parties have saved themselves the costs and risks associated therewith, thus satisfying the second and third factors delineated by *Wolinsky*. *Id.*

### C. The Settlement Is the Product of Arm's-Length Bargaining Between Experienced Counsel and There Is No Possibility of Fraud or Collusion

The fourth and fifth factors – whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion – also support a conclusion that the Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF)(DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this matter are represented by counsel experienced in litigating wage and hour and employment disputes. Huot Decl. ¶ 33; Ex. B (Firm Resume). Counsel for the parties have worked diligently to advance their clients' positions and negotiate a fair resolution. *Id.* ¶ 34.

Significantly, the parties participated in a mediation session with well-respected mediator Raymond Nardo, Esq. and participated in two additional Settlement Conferences with the Court, which ultimately – with Your Honor's rigorous assistance – resulted in the parties reaching a resolution of this matter. *Id.* ¶ 35. This history and litigation process leave no doubt that counsel for the parties negotiated at arm's-length and that the possibility of fraud or collusion is non-existent. *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" (quoting *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011)).

Further, the Settlement does not contain any of the provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases where workers release claims unrelated to their

claims for unpaid wages. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 CV 1012(DRH)(AKT), 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592(LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement).

Critically, this Settlement does not contain any terms that would militate against the Court approving it. For example, the Settlement does not contain any confidentiality provision or non-disparagement clause and allows Plaintiffs to openly and freely discuss their employment experiences, their lawsuit, their claims, and this Settlement with anyone. *See generally* Ex. A; *see also Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F. 3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause").

Likewise, the Settlement contains a ***mutual*** release limited to the FLSA and NYLL, and common law claims specifically "related to Plaintiffs' work with or for Defendants." *See* Ex. A § 2. The parties are mindful that courts have expressed concern over widespread, sweeping releases of claims. *See, e.g., Cheeks*, 796 F.3d at 206. However, this release is not overly broad, as evidenced by the approval of settlement agreements with similar language by courts within the Second Circuit. *See, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (release was fair and reasonable since it does not release any future claims). The release is further justified because Plaintiff has raised claims not only under the FLSA, but also under the NYLL. Accordingly, a broader release than in a typical FLSA settlement is warranted.

In sum, this Settlement provides for a remarkable recovery for Plaintiffs, mitigates significant risks and costs of litigation, is the product of arm's-length bargaining amongst experienced counsel, does not contain a confidentiality provision, non-disparagement clause, or overbroad release, is exceedingly fair and reasonable, and represents a fair compromise of bona fide disputes. As such, the Court should approve this Settlement.

## III. <u>The Proposed Attorneys' Fees and Costs Are Fair and Reasonable</u>

Plaintiffs request that the Court approve Plaintiffs' counsel's fees of $13,500.00, which is one-third of the Settlement Amount after costs are deducted, 32.1% before the deduction. Huot Decl. ¶ 36; *see Navarrete v. Milano Mkt. Place, Inc.*, No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"). The requested fee amounts

to only 15% of Plaintiffs' counsel's lodestar of $89,245.00 in this case and is exceedingly fair and reasonable under all applicable laws. Huot Decl. ¶¶ 37-38.

The requested fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and in this District. *See, e.g.*, *Singh v. MBD Constr. Mgmt., Inc.*, No. 16 Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Ezpino*, 2017 WL 3037483, at *3 ("[a] one-third contingency fee is a commonly accepted fee in this Circuit.") (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)); *Abrar v. 7-Eleven, Inc*., No. 14-cv-6315 (ADS) (AKT), 2016 WL 1465360, at *3 (E.D.N.Y. Apr. 14, 2016) (approving attorneys' fees for one third of the total settlement as fair and reasonable and collecting cases).

The requested fees are further justified by the circumstances of this action. Plaintiffs' counsel was retained on a purely contingency basis and, as a result, has advanced all costs and shouldered all the risks in this litigation. Huot Decl. ¶ 39. Such risks have included a possibility that Plaintiffs would recover no damages at all, given the highly fact-intensive nature of their wage claims. *Id.*

Awarding the requested fees furthers the FLSA's remedial purposes by recognizing the risks attendant to relatively small wage claims like Plaintiffs'. *See Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *22 (S.D.N.Y. Nov. 18, 2013) ("The FLSA and NYLL are remedial statutes designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes."); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) ("[D]ue to the relatively small settlement involved here, the requested fee award" of $50,000 out of a $125,000 settlement fund, or 40% of the settlement, "is necessary to compensate counsel adequately."). Put differently, awarding "fees sufficient to compensate counsel for at least a substantial portion of the work it has performed" ensures that counsel will continue to "be willing to take on future small-scale [ ] actions such as this." *Id.*; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) (noting that there is an inverse relationship between a fee award and the amount of the settlement).

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2014 WL 185628, at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751 (RRM) (RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.

As of March 29, 2021, Plaintiffs' counsel has billed 238.10 hours on this matter, amounting to $89,245.00 in fees if calculated pursuant to the lodestar. *See* Huot Decl. ¶ 37; Ex. C (contemporaneously-kept billing records). The lodestar is calculated based on hourly rates for Plaintiffs' counsel that have been approved by other courts in the Second Circuit and across the

country. Huot Decl. ¶¶ 41-45; *see also Molina, et al. v. Huaxcuaxtla Restaurant Corp., et al.*, No. 1:20-cv-02481-RWL, DE 74-4, 76 (S.D.N.Y. Feb. 25, 2021) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $350 for Mr. Crabill, $325 for Mr. Burr, and $175 for Mr. Aloise); *Sanchez, et al. v. The Stonehouse Rest LLC, et al.*, No. 1:18-cv-01397-ST, DE 75 ¶ 67, 77 (E.D.N.Y. Feb. 2, 2021) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $325 for Mr. Burr, and $175 for Mr. Aloise); *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, No. 1:20-cv-00726-LB, DE 23 ¶ 51, 25 (E.D.N.Y. Dec. 23, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $325 for Mr. Burr, and $175 for Mr. Aloise); *Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18-cv-00026-VSB, DE 97-1 ¶ 60, 99 (S.D.N.Y. May 6, 2020) (approving hourly rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Pazdniakou v. CoolTech Mech. Corp., et al.*, No. 1:19-cv-05434-SJB, DE 18 ¶ 49, 21 (E.D.N.Y. Mar. 23, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, DE 71, 80 (N.Y. Sup., Queens Cty. June 24, 2020) (noting Plaintiffs' counsels' substantial experience in wage and hour litigation and their skill and commitment to representing the Settlement Class's interests and approving hourly rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Reeves, et al. v. La Pecora Bianca, Inc., et al.*, No. 151153/2018, DE 57 ¶ 81, 108 (N.Y. Sup. N.Y. Cty. June 11, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $300 for Mr. Burr, and $180 for Mr. Aloise); *Georgiev, et al. v. Shapiro, et al.*, No. 1:19-cv-00122 (JPO), DE 41-6 at 1, 47 (S.D.N.Y. Oct. 2, 2019) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS, DE 129-1 ¶ 31, Court's May 8, 2019 Order (E.D.N.Y. May 8, 2019) (approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB), DE 104-4 ¶ 3, 109 ¶¶ 18, 20 (N.D.N.Y. Nov. 15, 2018) (approving a lodestar multiplier of 1.96, noting Plaintiffs' counsels' expertise in complex wage and hour litigation, commending Plaintiffs' counsel on the quality of their work, and approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Alam v. O&S Gen. Contractors Corp.*, No. 18-cv-2069 (LDH)(JO), DE 19-4 at Ex. 1, 20 (E.D.N.Y. Aug. 17, 2018) (approving hourly rates of $600 for Ms. Huot, $450 for Mr. Hartzband, $400 for Mr. Collopy, and $310 for Mr. Aloise); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No. 12 Civ. 3041 (AT), DE 107-8, 109 (S.D.N.Y. Oct. 2, 2014) (approving hourly rates of $875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, $315 for head paralegal, and $275-$245 for other paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519-BCW, DE 140-1, 155 (W.D. Mo. July 7, 2017) (approving hourly rates of $550 for Ms. Huot, $375 for Mr. Collopy, and $310 for Mr. Aloise); *Run Them Sweet, LLC, v. CPA Global, LTD, et al.*, No. 16 CV 1347, DE 108-4 at Ex. 2, 114 (E.D. Va. Oct. 6, 2017) (approving hourly rate of $550 for Ms. Huot); *March, et al. v. First Choice Med., PLLC*, No. 15-cv-3669 (GRB), DE 46 ¶ 12, Court's Mar. 6, 2017 Order (E.D.N.Y. Mar. 7, 2017) (court approved one-third fee after lodestar, based on $500 per hour rate for Ms. Huot, used as cross-check).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Auth. of N.Y. and N. J.*, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful



portion of Plaintiffs' counsel's practice is non-contingency cases where clients in fact pay on an hourly basis at the following rates: $500 per hour for Ms. Huot, $425 per hour for Mr. Hartzband, $350 per hour for Mr. Collopy, $350 per hour for Mr. Crabill, $325 for Mr. Burr, $175 per hour for head paralegal Mr. Aloise, and $150 per hour for other paralegals. Huot Decl. ¶¶ 40-43. Working on the instant matter on a contingency basis required Plaintiffs' counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. *Id.* Nevertheless, Plaintiffs' counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.*

The requested fee award of $13,500.00 represents a negative multiplier of 0.15 times of Plaintiffs' counsel's lodestar of $89,245.00. Indeed, the requested fee award is only 15% of Plaintiffs' counsel's actual lodestar. *Id*. ¶ 38. Put differently, Plaintiffs request approval of attorneys' fees amounting to less than a quarter of the market value of the hourly work that has been invested in this action to bring it to resolution. *Id*. As such, the requested attorneys' fees are reasonable.

Further, Plaintiffs request the Court approves reimbursement of costs and expenses incurred by Plaintiffs' counsel in furtherance of this matter. Plaintiffs' counsel has incurred $1,790.00 in actual costs and expenses for filing fees, service costs, ethics counsel fees, and postage. *Id.* ¶ 49. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Settlement should be approved. *Id.* ¶ 50; *see Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

Accordingly, Plaintiffs' request for approval of $13,500.00 in attorneys' fees and $1,790.00 in unreimbursed expenses, for a total of $15,290.00 as compensation for Plaintiffs' counsel's work and their costs in this matter, is reasonable.

## IV. **<u>Conclusion</u>**

Accordingly, the parties jointly request that the Court approve of the Settlement, So Order the Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, and have it entered on the docket by the Clerk of the Court.

We thank Your Honor for the Court's time and consideration.

Respectfully submitted,

Innessa M. Huot

Cc: Counsel of Record (*via* ECF)